## Robert Law v. John B. Grommes and Michael Ullrich.

1. COURTS—*Presumptions in Favor of Jurisdiction.*—Every reasonable presumption will be indulged in favor of the jurisdiction of a court of general jurisdiction, and the finding in its decree or judgment that a defendant has been duly served with summons will be held to be *prima facie* evidence of the fact.

2. SAME—*How far the Presumption Prevails.*—The presumption from a recital in a judgment or decree of the service of summons will prevail only where there is nothing in the record to rebut, impeach or contradict it.

3. SERVICE OF SUMMONS—*Sufficiency of.*—Personal service upon a defendant in an action at law, may be made as well by delivering a copy of the writ as by reading the same to him.

4. SAME—*Object.*—The object of the service of process is to inform the defendant of the necessity for his appearing and pleading to the action.

5. SAME—*A Return by Delivering a Copy.*—The following return: "Served this writ on the within named, Robert Law, by delivering a copy thereof to him this 10th day of April, 1891," upon a summons in an action of debt upon a foreign judgment, shows a sufficient service of process to confer jurisdiction upon the court.

**Memorandum.**—Debt. In the Circuit Court of Cook County; the Hon. SAMUEL P. McCONNELL, Judge, presiding. Judgment by default for want of plea; error by the defendant. Heard in this court at the October term, 1894, and affirmed. Opinion filed November 12, 1894.

BRIEF FOR PLAINTIFF IN ERROR, ROBERT MATHER AND HENRY S. WALDRON, ATTORNEYS.

In Belingall v. Gear, 3 Scam. 575, the sheriff's return on a *scire facias* to foreclose a mortgage was as follows: "Executed this 20th day of April, 1830, by reading." Judgment was rendered by default. Holding that this return did not comply with the statute which required the sheriff "to make known to the mortgagor why judgment shall not be rendered," etc., the court said: "Before a court is authorized to render a judgment by default, it must appear clearly and affirmatively, by the return of the officer charged by law with the service of process, that the defendant has been regularly served. The return should show the

Law v. Grommes.

time and mode of the service, and on whom it is made. It is this service which gives the court jurisdiction over the person of the defendant, and without it or his voluntary appearance to the action, its proceedings are irregular and erroneous."

To the same effect is Ogle v. Coffey, 1 Scam. 239.

In Wilson v. Greathouse, 1 Scam. 174, it is said: "The plaintiff, in a case where the defendant does not appear, proceeds at his peril; he is bound to see that all antecedent proceedings are regular, and if they are not, he necessarily consents to take the consequences of such irregularities."

In Ball v. Shattuck, 16 Ill. 299, the court say: "The mode of service of summons, where not otherwise provided by statute, is by reading the same to the defendants and each of them, and the return should show the time when, upon whom, and how the service was made." The following form may be adopted in cases where the statute does not otherwise provide:

"I did, on the——day of——18—, serve this writ, by reading the same to the within named A. B. Dated this ——day of——18—.

C. D., Sheriff of H. C., Ill."

After this express direction to the sheriff as to manner of making service of summons, there would seem to be no reason or excuse for making mistakes. But the question arose again, and in Botsford v. O'Conner, 57 Ill., at page 77, the language quoted *supra*, from Ball v. Shattuck, was quoted and approved. And in McNab v. Bennett, 66 Ill., page 161, the court repeats: "Service, under our law, means to read the writ to the party."

W. O. JOHNSON, attorney for defendants in error.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

A judgment by default was rendered in the Circuit Court in an action of debt upon a foreign judgment.

The sheriff's return upon the summons shown in the record was, omitting signature, as follows:

"Served this writ on the within named Robert Law, by delivering a copy thereof to him this 10th day of April, 1891."

The summons was made returnable to the April term, 1891, of the Circuit Court, and that term beginning on April 20th, the service, if good, was in time for the term to which the writ was returnable.

The declaration, however, was not filed until April 11, 1891, which was one day too late to entitle the plaintiff to a default and judgment at the April term, even though the, service by delivering a copy of the writ was a lawful service.

At the May term the judgment by default was entered, without the issuance or service of any other writ, so far as is shown by the record, except by the recitals of the judgment itself. The recital of the judgment roll as to service of the summons, is as follows:

"It appearing to the court that due personal service of summons issued in said cause, has been had on the defendant for at least ten days before the first day of this term."

That every reasonable presumption will be indulged in favor of the jurisdiction of a court of general jurisdiction, and that its findings in its decree or judgment that a defendant has been duly served with summons, will be held to be *prima facie* evidence of that jurisdictional fact, is a well settled rule in this State. Timmerman v. Phelps, 27 Ill. 496; Coursen v. Hixon, 78 Ill. 339; Turner v. Jenkins, 79 Ill. 228; Haworth v. Huling, 87 Ill. 23.

In the last two cases cited, one or more terms of court had intervened between the term to which the summons that was defectively served was returnable, and the term at which the judgment was rendered; and it was held that the presumption arose from the recitals in the decree of due service of process upon the defendants, that another summons than the one appearing in the record had been issued, returnable to the next term of court and duly served, but lost from the files or omitted from the record.

In the first case cited, Timmerman v. Phelps, the return

of service of the summons was signed by a deputy sheriff as such, without using the name of the sheriff, and it being recited in the decree that process had been duly served on the defendant, it was held that it would be presumed that it had been made to appear in some way to the court below that the sheriff was dead, in which event the deputy sheriff had the authority, under the statute, to sign the return in his own name.

In the other case, Coursen v. Hixon, it did not appear in what manner process was served upon one Young, a defendant jointly sued with one against whom a *scire facias* was issued, to make him a party to a judgment against Young, and it was contended by the defendant in the *scire facias* proceeding, that the record did not show jurisdiction in the court below to enter judgment against Young; but the judgment reciting that due service of process was had upon Young and the record containing nothing to impeach or contradict the recital, the judgment was held to be regular. We state these cases to show the extent to which presumptions in favor of jurisdictional recitals in decrees and judgments exist.

But such presumptions are only *prima facie*, and prevail only where there is nothing in the record to rebut, impeach, or contradict them.    See above cases.

If the declaration had been filed in time for a default at the April term, there might have been room for a presumption to arise from the fact that no default was taken until at the May term, that another summons was issued returnable to the May term, and was duly served, and had become lost, as was held in Turner v. Jenkins, and Haworth v. Huling, *supra.*

But we think that presumption is fairly rebutted from the fact that because the declaration was not filed in time no default could have been taken at the April term.

The only justifiable presumption of fact upon the record, in that regard, is, in our opinion, that the cause was continued to the May term, not to obtain a better service upon another summons, but because the declaration was filed too late to admit of an earlier default.

The failure to file the declaration in time was a conclusive reason why default was not and could not have been taken until at the May term, and being conclusive, it rebuts all presumption of a fact that rests upon the legal fiction that the continuance was for some purpose of which the record furnishes no evidence.

Moreover, it appears from the return on the summons that the defendant was found.

The authority for the issuance of an alias summons, without an order of court, is found in Section 9, Chapter 110, Revised Statutes, and is as follows:

" Whenever it shall appear, by the return of the sheriff or coroner, that the defendant is not found, the clerk shall, at the request of the plaintiff, issue another summons or capias, as the case may be, and so on until service is had."

Except, therefore, when the return of "not found" is made, the clerk has no authority to issue an alias summons, unless upon an order of court. Berry v. Krone, 46 Ill. App. 82; Peck v. La Roche, 86 Ga. 314; 12 S. E. Rep. 638.

The record is destitute of any order of court directing the issuance of another summons because of a defective service upon the defendant who was found, or for any other reason.

There being, then, no authority in the clerk without an order of court to issue an alias summons where it is shown by the return on the original summons that the defendant was found, and no order of court appearing to have been made, and the presumption being that the cause was continued to the May term because the declaration was not filed in time for a default at the April term, we think this completely rebuts the *prima facie* presumption arising from the recital in the judgment that there was due service of another summons than the one shown in the record.

We are, therefore, forced to the conclusion that the only summons that issued and the only service that was had upon the defendant, was the summons upon which the return was made as above set forth.

The question then arises, was the service of the summons

by delivering a copy to the defendant such a service as gave jurisdiction to the Circuit Court, of the person of the defendant, and to enter judgment against him.

The statute, Sec. 4 of the Practice Act, relating to the service of summons generally, and the return thereof, merely provides that "it shall be the duty of the sheriff or coroner to serve all process of summons  *  *  *  and to make return of such process to the clerk who issued the same, by or on the return day, with an indorsement of his service, the time of serving it, and the amount of his fees."

It does not provide in what manner the service shall be made, whether by reading or the delivery of a copy thereof.

In numerous kinds of suits and proceedings, both in courts of record and before justices of the peace, where the defendants are found, like in replevin, attachment, garnishment, attachment of water craft, and proceedings to sell the real estate of a decedent to pay debts, the statutes provide that in some of the cases named the summons shall be served by "reading" the same, and in other cases by "reading" or "delivering," or "leaving" a copy thereof.

In chancery, in suits for forcible entry and detainer against corporations, in eminent domain proceedings, and in various other suits and proceedings, the statutes provide for service of the summons where the defendants are found, by "leaving" or "delivering" a copy thereof. It may not be denied that the statutes might provide for a particular form of service in every case, and the only troublesome question is, what will amount to a legal service of a summons so as to confer jurisdiction in cases where the statute prescribes no form or manner of service.

In Ball v. Shattuck, 16 Ill. 299, Botsford v. O'Conner, 57 Ill. 72, and McNab v. Bennett, 66 Ill. 157, it is said, in substance, that in cases where it is not otherwise provided by statute, the mode of service of summons is by reading the same to the defendants.

But with profound deference for the utterances of the Supreme Court, whether upon questions directly involved,

or as argument and by way of illustration merely, it was not necessary to the decision of either of those cases that what was said in the opinions filed therein, should have been said, and the doctrine of *stare decisis* does not flow from them in regard to the question before us.

All that was decided in the first case cited was that the return of a summons which did not show how or when the summons was served conferred no jurisdiction upon the court below.

The second case cited decided only that a return which failed to show how the writ was served conferred no jurisdiction.

In the third case cited the decision was that a return of the service of a capias which stated that the writ had been executed " by arresting the defendant, who is now in jail," was not a good service, because " there may be an arrest without service and service without an arrest."

And in each case it was held that the return as made showed no lawful service.

The question of the sufficiency of a return of service either by " reading " or by " delivery of a copy," the return in all other respects being good, was not involved in either of the cases cited, and what was said in either of the opinions was in fact but by way of illustration.

If by what was said in either case it was meant that at common law the method of service was by " reading " the summons to the defendant, we respectfully submit that historically speaking, the statement is not quite accurate.

According to Blackstone (book 3, p. 279), in all personal writs for injuries not against the peace, the summons is described as being a warning to appear in court at the return of the original writ (when actions were commenced by original writ, instead of as now by writ of summons) given to the defendant by two of the sheriff's messengers called summoners, either in person or left at his house.

In real actions the warning was by erecting a white stick on the defendant's grounds.

See, also, Bouvier's Law Dictionary, title " Process."

That the "warning" in personal actions, when not left at the house, was verbal and not by reading, is quite clearly inferable from what is said on page 280—"if the defendant disobeys this verbal monition," then, etc.

Beyond this reference to Blackstone we are without handy means of ascertaining the manner of service of a summons at common law. In Tidd's Practice, 109, it is said: "The first process or proceeding upon the original writ ＊ ＊ ＊ is a summons or warning to appear ＊ ＊ ＊ which is made out by the plaintiff's attorney for the sheriff, and delivered by one of his officers to the defendant, or left at the usual place of his abode."

The earliest statutory regulation of the manner of service which we have means of verifying, is that of 12 George I, Ch. 29, S. 1, which in terms requires " personal service on the defendant."

The statute of 2 William IV, Ch. 39, S. 31, requires service "as heretofore," and that is said by Chitty (General Practice, Vol. 3, p. 260), to refer to the statute of George I, above referred to.

Although these statutes are too recent to be embraced in the common law as adopted by this State, they are cited for historical illustration, and the statutes of 15 and 16 Vict., Ch. 76, S. 17 (Jacob's Fisher's Digest, title " Practice," subdivision " Service," and " Dispensation with Service," 10537 and 10543), continue the same requirement that the service " shall as heretofore be personal," wherever practicable.

The inference is not unreasonable that those statutes have merely declared the common law as existing before them, in requiring that the service shall be " personal."

That " personal " service may be as well by delivering a copy of the writ to the defendant as by reading the same to him, or, as said by Blackstone, by verbally informing him of its requirements or by leaving it at his house, does not seem to require much argument.

" The very object of the service of process is to inform the intended defendant of the necessity for his appearing and pleading to the action." Chitty's General Practice, Vol. 3, p. 264.

Whatever force may have existed in the years when but few knew how to read, in the requirement that a defendant should be told by "summoners" what was required of him by the writ, or should have the writ read to him, appears to us, in the absence of either statute or binding decision, to no longer exist; and that when the statute prescribes only that a writ shall be served, without specifying the manner of service, we may well hold that in these days of a general knowledge of reading, the method of serving by delivering a copy—a mode specifically provided by statute in so many cases—as fully informs the defendant of what is required of him as can be done by word of mouth.

We therefore hold that the service by delivering a copy of the summons to the defendant was a valid service, and the judgment will be affirmed.

Mr. Presiding Justice Waterman.

I think that the legislature should enact that service of process shall, in all cases at law, be by delivery of a copy; such legislation would be prospective only in its operation.

A decision that service in such manner, without reading, is sufficient, is necessarily retroactive. It must be, in effect, a statement of what the law has in this State ever been. The Supreme Court have certainly led the public to believe that, at law, service of summons without reading, was insufficient. Such has been the general understanding upon which litigants and the bar have acted.

To now declare that the utterances of the court of last resort were unwarranted and mistaken, and that in relying thereon, parties have placed themselves in peril of having judgments entered against them upon service heretofore treated as insufficient, may be fraught with consequences not only troublesome but unjust.

Mr. Justice Gary.

I entirely concur in the opinion of Judge Shepard.

I write only to protest against the doctrine of the cases commented upon, that a court should be presumed to have jurisdiction because it says that it has it, when, if it ever did

have jurisdiction, the manner of acquiring it was of record, and there is no record existing.

A decree in chancery granting relief is erroneous, unless the facts on which it is based, or evidence to prove them, sufficient to justify the decree, are in the record. The opinion of the chancellor as to conclusions is not accepted. Why should it be as to whether a party has been duly served, when it don't appear that he was served at all? Randall v. Songer, 16 Ill. 27.