### Peter Markiewicz v. The People of the State of Illinois, ex rel. Martin Delaney et al.

#### Gen. No. 12,748.

1. COMMISSIONER OF HIGHWAYS—*what sufficient qualification to hold office of.* If a person elected to such office is a legal voter and a resident of the town by which he is elected and has been such a resident for a year previous to such election, and is a *bona fide* resident of the road commissioners' district at the time he is elected, his qualifications are complete.

2. TOWNSHIP ACT—*section 1, article 9, construed.* A "legal voter," as used in this section, means a legal voter of the town by which the highway commissioner is elected.

3. LEGAL VOTER—*person may be, notwithstanding not a qualified elector.* One otherwise qualified to vote is a "legal voter," within the

meaning of the statute fixing the qualifications of the highway commissioners, notwithstanding because of the lack of residence for a sufficient time in a particular precinct in which he lived at the time of the election he was not a "qualified elector."

*Quo warranto* proceedings. Appeal from the Circuit Court of Cook County; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the October term, 1905. Reversed. Opinion filed April 10, 1906.

**Statement by the Court.** This is a contest over an elective office. The attorney-general of Illinois, at the relation of certain electors of the township of Lemont in Cook county, brought in the name of the People an information in the nature of a *quo warranto* against Peter Markiewicz, challenging his right to the office of commissioner of highways in said township. Markiewicz answered by plea to the information that he had been duly elected commissioner of highways in the town of Lemont April 4, 1905, to fill a vacancy in the office of commissioner of highways, from Road Commissioners' District No. 3 in said town of Lemont; that he duly qualified and has ever since said April 4, 1905, been a member of the board of highway commissioners in and for said town of Lemont. In his plea he further qualifies himself as properly holding the office by asserting that for more than one year prior to March 18, 1905, and ever since said time he has been a resident and legal voter of said town of Lemont, and that on and prior to March 18, 1905, he was a resident of that portion of the town of Lemont known as Road Commissioners' District No. 3, and that he was such a resident of said Road Commissioners' District No. 3 on April 4, 1905.

A replication to this plea was filed alleging that there was no vacancy in the office of commissioner of highways for Road Commissioners' District No. 3, in the township of Lemont, April 4, 1905, requiring or authorizing an election, and denying that Peter Markiewicz was on March 18, 1905, or at any time following said date up to and including April 5, 1905, a legal voter of the town of Lemont, and asserting that said Markiewicz was not qualified to vote

and did not in fact vote at the said election April 4, 1905;
also that Markiewicz did not possess the necessary resi-
dence qualifications for holding the office of highway com-
missioner of Road Commissioners' District No. 3 at the
time of his election, and had not resided in that portion of
the town of Lemont known as Road Commissioners' Dis-
trict No. 3 for one year next before said election for town
officers on April 4, 1905, but had only resided in Road
Commissioners' District No. 3 for the period of twenty
days, and that his residence in said district was for the
purpose of holding office if elected and removing if not
elected, and that Markiewicz was not in fact a resident of
said District No. 3 at the time of his election.

When the case came to trial a jury was waived and it
was submitted to the court on a stipulation of facts, which
sets forth that Lemont is organized under the general
township laws; that it is divided into three road commis-
sioners' districts, which do not conform to the election
districts of said town; that the place occupied as a residence
by Markiewicz before March 15, 1905, is located in election
district number 3, while the place to which he moved and
in which he claims residence since that date is in election
district number 4; that the highway commissioners are
voted for by all the voters in the township, and are not
elected respectively by the vote of the voters of the re-
spective highway commissioners' districts; that the full
term of office of a highway commissioner is three years
and until his successor is elected and qualified; that on
April 4, 1904, the highway commissioners regularly hold-
ing office for the respective districts were, district No. 1,
James Ash, term expiring annual election 1905; district
No. 2, John H. O'Brien, term expiring annual election 1906;
district No. 3, Fred Krueger, term expiring annual election
1904; that on April 5, 1904, the annual town election was
held for the purpose of electing, among other officers, the
highway commissioner for Road Commissioners' District
No. 3; that at said election another person than Krueger
was elected a highway commissioner for said Road Com-

missioners' District No. 3, and received from the proper
officer his certificate of election; that April 15, 1904, a *quo
warranto* proceeding was instituted against said person so
elected, which proceeding resulted in a final judgment
ousting him from office; that Krueger continued to exer-
cise the office of highway commissioner of Road Commis-
sioners' District No. 3 as a hold-over officer; that notice
was legally given March 18, 1905, for the election of high-
way commissioner for Road Commissioners' District No. 1
for the full term of three years, and for the election of
highway commissioner for Road Commissioners' District
No. 3, to fill said office for the unexpired term; that the
election held pursuant to said election notice was on April
4, 1904, and was the regular annual town election; that at
said election Markiewicz received the majority of the votes
cast for highway commissioner for said Road Commission-
ers' District No. 3; that Markiewicz was declared to be
duly elected to that office; that a certificate of election was
issued to him, and that he took and filed the proper oath of
office, entered upon its duties and has continued to perform
them up to the present time; that prior to March 15, 1905,
Markiewicz had resided in Road Commissioners' District
No. 2; that on March 14, 1905, Markiewicz rented a house
in Road Commissioners' District No. 3, and paid one
month's rent " within several days of March 14th " for said
house; that on March 15, 1905, Markiewicz moved into said
house with his family and personal belongings, and since
said March 15, 1905, has continuously lived there with his
family.

During the progress of the trial it was admitted of record
that Markiewicz did not in fact vote at the election of April
4, 1905, and was not qualified to vote for the election of
county or state officers voted for at said election, or upon a
bond proposition submitted to the voters of said election;
also that the town of Lemont is divided into four election
districts under sections 30 and 31 of chapter 46 of the Re-
vised Statutes of Illinois.

Also, in view of certain statements and admissions of the

counsel for relators and for respondent in open court, the court made findings of fact in the case, that the respondent Markiewicz was a resident of Road Commissioners' District No. 3 at the time of the election, and that he is a citizen of the United States, and for more than one year prior to April 5, 1905, had been a resident of the town of Lemont, but that he did not reside in the election district in which he would be required to vote for thirty days before the election.

Upon these pleadings and stipulations and findings of fact, the court held as propositions of law:

First. That a person who has not been a resident of an election district thirty days next preceding the town election is not a legal voter, and is therefore ineligible to hold any town office as the result of such town election.

Second. That a person not a legal voter is not eligible to the office of commissioner of highways, and is not legally qualified to hold the office of commissioner of highways under the provisions of the Township Organization Act of this State.

Third. That it is a necessary qualification for a commissioner of highways of a town in a county under township organization, that he should have resided in the election district in which he lives at the time of his election for a period of thirty days next preceding said election.

Fourth. That when a person is disqualified by change of residence within thirty days before the election from voting in any election district of a town, such person is not a "legal voter," within the meaning of the term as used in section 84 of chapter 139 of the Revised Statutes of Illinois.

A fifth proposition of law presented by counsel for relators the court refused to hold. It was: That it is a necessary qualification before a person can hold the office of commissioner of highways for a road commissioners' district, that he should have resided in the district for which he is elected commissioner, as aforesaid, for one year immediately preceding his election.

To the holding of the four propositions of law, before set forth, the respondent excepted; to the refusal of the fifth the relators excepted.

The court then made "the ultimate finding of fact" "that the evidence in the case, with all its reasonable inferences and influences, had wholly failed to establish the legal right or qualification of the respondent to the office of commissioner of highways in and for Road Commissioners' District No. 3 in the town of Lemont," and entered a judgment of ouster and for costs against the respondent. From this judgment he appealed to this court, where he has assigned as error the rendering the judgment of ouster, the refusal to dismiss the petition, and the holding of the propositions of law above set forth as held.

FRANCIS M. KEOUGH, for appellant; DANIEL P. MURPHY, of counsel.

W. H. STEAD, Attorney-General, and COBURN & CASE, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

A commissionership of highways is a town office. Its duties in counties under township organization are defined in chapter 121 of the Revised Statutes of Illinois on Roads and Bridges, while the provisions concerning election thereto are found in the Township Organization Act, being chapter 139 of the Revised Statutes of Illinois, and in the General Election Law. Section 1 of article 9 of chapter 139 is that "No person shall be eligible to any town office unless he shall be a legal voter and have been one year a resident of such town."

The provision that the officer should be a legal voter is an addition to the law as it existed before the passage of the revised Act in March, 1874. Before that time the only expressed qualification was residence within the town for one year.

The qualifications provided for in section 1 of article 9 of chapter 139 have received another addition by an Act

approved June 21, 1895 (subsequently amended by the ad-dition of a proviso by Act of May 10, 1901), which amended section 16 of article 1 of the same chapter. Said section 16 before amendment was as follows: "Of the commissioners of highways elected at the first election, one shall hold his office for one year, and one for two years, and the other for three years, to be determined between them by lot before entering upon the duties of their office, and until their re-spective successors are elected and qualified."

The amendment of 1895 added to this the following pro-vision:

" And it shall be the duty of the commissioners of high-ways, together with the town clerk and supervisor to meet within ten days after the next town meeting after the pas-sage of this Act in each town, and divide each township into three districts, to be known as road commissioners' districts numbers one, two and three, dividing the township as near into three equal divisions as possible, taking into consider-ation extent of territory and population in making and forming boundaries of such districts, and a plat of each district to be filed in the office of the town clerk of said town. *The purpose of such division is to have the different portions of each township represented by a commissioner of highways, who is a resident of such district, and when a va-cancy occurs such vacancy shall be filled either by election or appointment, as the case may be, by a resident of said district where such vacancy occurs.*"

Counsel for appellees in this case claim that the effect of this amendment is to add to the qualifications required by section 1 of article 9 for a highway commissioner, residence within the road commissioners' district for which he is elected for a year before the election. We see no reason for reading such a provision into the law. In our opinion, if the person elected is " a legal voter," a resident of the town for a year, and a *bona fide* resident of the road com-missioners' district at the time he is elected, his qualifica-tions are complete when elected.

We are not called upon to decide what would be the effect of his moving out of the district after election—which is the point discussed in an analogous case by the

learned judge of the Appellate Court in the Fourth District, to the opinion in which we are cited by appellees. People ex rel. v. Ballhorn, 100 App. 573.

Appellees disclaim any admission that there was a vacancy requiring an election on April 4, 1905, or of the *bona fides* of the residence of respondent in Road Commissioners' District No. 3 on that date; but we deem the stipulations and findings conclusive on these points, and that the only question for us to decide is whether Markiewicz was on April 4, 1905, "a legal voter" under the meaning of section 1 of article 9 of chapter 139 of the Revised Statutes of Illinois.

The correct answer to this question depends on another: What is meant by a legal voter in this statute? A legal voter where, and in what body of electors? The answer to this seems to us plain, in view of the conceded fact with the statement of which this opinion begins—that a commissioner of highways is a town officer, as much so as a supervisor or a town clerk, to be voted for by all the qualified electors of the town, and not by the qualified electors only of the road commissioners' district of which he is a representative and must be a resident. The phrase, a legal voter, must mean "a legal voter of the town."

The main question then is, "Was the respondent, Markiewicz, a legal voter of the town of Lemont, April 4, 1905?" The appellees contend and the court below found that he was not, because although he was at that time a male citizen of the United States over twenty-one years of age, and had resided in State, county and town for the year next preceding, he had not resided in "the election district" for the thirty days next preceding that date, and therefore could not legally (and as a matter of fact did not) himself vote at the election.

With this position we cannot agree. We think that the respondent was a legal voter of the town of Lemont on the day of the election. It is true that section 1 of article 7 of the Constitution of Illinois on Suffrage provides that "every person having resided in this State one year, in the

Markiewicz v. The People.

county ninety days, *and in the election district thirty days next preceding any election therein*, \* \* \* who shall be a male citizen of the United States above the age of twenty-one years, shall be entitled to vote at such election"—but it is to be noted that this constitutional provision does not purport to be a definition of "a legal voter"—a term not used therein. It is a statement of what constitutes a qualified elector at any given election. A qualified elector for a given election is one thing; "a legal voter" is another, and the latter phrase may vary in meaning according to the context and purpose in and for which it is used. This is well illustrated in a case to which appellees have cited us—Sanford v. Prentice, 28 Wisconsin, 362. This case is not in point as cited, but it is useful in showing the distinction we have indicated. In that case the question was whether a particular tax, which needed the assent of "a majority of the legal voters," had been validated by an election at which a majority of those voting, but not a majority of the qualified voters of the district, had approved it. The court pointed out the difference between the term "qualified electors" and "legal voters," and held that *in the law under consideration* "legal voters" meant only those actually voting.

The distinction pointed out between "qualified electors" and "legal voters" is just as valid when it operates differently. It would be a *reductio ad absurdum* of appellees' argument to say that, if a law of Wisconsin had limited the holding of office in that district to legal voters, a qualified elector was not eligible, because he had not voted at any particular election in it.

We think that in the case at bar it is equally an absurdity to suppose that the respondent was not eligible as highway commissioner, because he did not in fact vote for himself or somebody else April 4, 1905, and we think that even if he were not a qualified elector, he might be a legal voter under the meaning of the Township Organization Act.

When the Legislature in the revision added the qualification of being "a legal voter" to the one year's residence in the town before required for incumbency of township office,

we think it intended merely to place beyond doubt the proposition that no unnaturalized citizen or minor should be eligible. In this view we should hold Markiewicz to be "a legal voter" of the town and eligible, although on April 4, 1905, he was, because of his removal from one election district in the town to another within the thirty days preceding, for the nonce not a qualified elector for the office to which he was chosen.

There is confirmation of this view in the fact that he was a qualified voter of the town on that day, even if he were not a qualified elector at that election. There can be no doubt whatever that the annual election at which he was elected was, under the statute, a part or element of the annual town meeting at which the miscellaneous business of the town could be transacted at one of the several polling places. It does not matter whether any such place was designated or any business done thereat or not. It could have been done, and at that place Markiewicz, as a male citizen of the United States over twenty-one years old and a resident of the town for a year, could have voted. For that purpose, at least, the language of the Election Act, chapter 46 of the Revised Statutes, section 29, is in full force. " In counties under township organization each town shall constitute an election precinct." In this sense, therefore, there can be no doubt that Markiewicz was a legal voter of the town of Lemont on April 4, 1905.

But we might go further. The Supreme Court in Williams v. Potter, 114 Ill. 628, held that for the purposes not only of the town meeting for miscellaneous business, but for the purposes of a town election for town officers, there can be but one precinct, and that, co-extensive with the boundary of the town, that all the polling places or "election districts" for the purposes of a town election as distinguished from other elections are open to all the voters of the town alike, subject only to the limitation that no one shall vote at more than one place. In that view Markiewicz was not only "a legal voter," but a qualified elector at the election on April 5, 1905. That he abstained from voting is, we have already indicated, of no importance.

Markiewicz v. The People.

The distinction which appellees attempt to draw between the laws in force relating to this matter when the case of Williams v. Potter arose, and those in force in 1905, is not valid. We have carefully examined the laws then in force regarding elections and township organization, and the laws as subsequently amended, and we can see no change which alters the principle involved. The election law now, as then, provides that in counties under township organization each town shall constitute an election precinct. It now provides that the county board shall provide different polling places when the number of voters reaches a certain figure; it then provided that it *might* do so. But that does not change the principle involved, which makes a distinction between the township elections and all others. Then, as now, the Township Organization Act provided (sec. 68, chap. 139) that "the general laws of the state in regard to elections and qualifications of voters shall apply to all elections held under this Act *so far as the same may be applicable,* except as hereinafter provided." Counsel for appellees are forced in their attempt to withdraw the case at bar from the operation of the principles laid down by the Supreme Court in Williams v. Potter, to assert that the reasoning of said decision is unsound and in disregard of the law as it then existed. We do not agree with this contention, and would not be at liberty to adopt it if we did. Counsel cannot expect us to follow even Mr. Haines' opinion in his excellent compilation of the Township Laws of Illinois against that of the court of last resort of the State. If the announcement of the principle noted was a *dictum* in Williams v. Potter, it was at least a judicial *dictum* which we are bound to respect. Law v. Grommes, 158 Ill. 492.

The technical objections made by appellees to the sufficiency of the bill of exceptions are not well taken.

We are of the opinion that the respondent is entitled to exercise the office from which he was ousted by the judgment of the Circuit Court, and that judgment is reversed.

*Reversed.*